## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ALFRED MCZEAL, ET AL.**                                          **CIVIL ACTION**

**VERSUS**

                                                                  **NO. 19-517-SDD-RLB**

**STATE OF LOUISIANA, ET AL.**

### NOTICE

  Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

  In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

  **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

  Signed in Baton Rouge, Louisiana, on August 11, 2021.

             _____

             **RICHARD L. BOURGEOIS, JR.**
             **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALFRED MCZEAL, ET AL.                                    CIVIL ACTION

VERSUS

                                                         NO. 19-517-SDD-RLB

STATE OF LOUISIANA, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Judgment on the Pleadings (the "Motion") filed on April 15, 2021, by Defendants, Mark E. Falcon ("Falcon") and Charlotte Hawkins ("Hawkins"). (R. Doc. 31).

On May 24, 2021, approximately one month after the deadline to file an opposition, Plaintiffs, Alfred McZeal ("McZeal"), Lenora Wilson ("Lenora"), and Warren Wilson ("Warren") (collectively, "Plaintiffs"), filed a "*Motion for Leave to File Opposition Out of Time.*" (R. Doc. 33). Their opposition to the Motion (the "Opposition") is attached thereto as a proposed pleading.[1] (R. Doc. 33-1). Falcon and Hawkins filed a memorandum opposing Plaintiffs' motion for leave on May 27, 2021. (R. Doc. 34).

Although untimely, the Court recognizes Plaintiffs' *pro se* status, and therefore it considers the arguments raised in Plaintiffs' Opposition. The motion for leave will be granted by separate order.

For the reasons discussed more thoroughly below, the Court recommends that the Motion for Judgment on the Pleadings be granted in part and denied in part and that this case be dismissed.

---

[1] Local Rule 7(f) affords a respondent twenty-one days from service of a motion to file an opposition. The Motion was filed and served via the Court's electronic CM/ECF filing system on April 1, 2021. Accordingly, Plaintiffs' Opposition was due on April 22, 2021.

## I.    RELEVANT PROCEDURAL BACKGROUND

On August 9, 2019, Plaintiffs, proceeding *pro se*, commenced this putative class action against Falcon, Hawkins, and the State of Louisiana through the Office of Group Benefits ("OGB") and the Office of Debt Recovery ("ODR"). In their Complaint, Plaintiffs asserting violations of the Fair Debt Collections Practices Act ("FDCPA") (Count 1), fraud (Count 2), violations of Civil Rights pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 (Count 3), the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count 4), the Louisiana Fair Debt Collections Practices Act (Count 5), negligence (Count 6), negligent misrepresentation (Count 7), civil conspiracy (Count 8), the Louisiana Unfair Trade Practices Act ("LUTPA") (Count 9), unjust enrichment (Count 10), intentional infliction of mental distress (Count 11), invasion of privacy (Count 12), and seek declaratory judgment regarding same (Count 13). (R. Doc. 1 at 31-43).

On September 6, 2019, the defendants filed a Motion to Dismiss asserting that the Court lacks subject matter jurisdiction over Plaintiffs' claims because they are barred by Eleventh Amendment immunity. (R. Doc. 5). Specifically, the defendants argued that Plaintiffs' state law causes of action and Civil Rights claims pursuant to Section 1981, 1983, 1985, and 1986 are barred by the Eleventh Amendment. Next, they argued that Plaintiffs' FDCPA claims are barred because: (1) "[t]he Eleventh Amendment bars [FDCPA] claims against the State of Louisiana, its agencies" (such as the OGB and the ODR) "and employees sued in their official capacities" (such as Falcon and Hawkins); and (2) "the FDCPA does not create a private cause of action against" Falcon and Hawkins because it "expressly excludes from 'debt collector' any officer or employee of any state to the extent collecting or attempting to collect any debt is in the performance of his official duties." (R. Doc. 5-1 at 2). Finally, the named defendants argued that

Congress has not waived Eleventh Amendment immunity for RICO claims, and therefore the Court lacks subject matter jurisdiction over same. (R. Doc. 5-1 at 2).

The Motion to Dismiss was ultimately granted in part and denied in part. (R. Docs. 14, 19 and 20). The Court found that (1) the Eleventh Amendment bars Plaintiffs' claims against the OGB and the ODR; (R. Doc. 14 at 6); (2) the Eleventh Amendment bars suits for monetary damages against state employees, such as Falcon and Hawkins, acting in their official capacities; (R. Doc. 14 at 7); (3) the Eleventh Amendment bars Plaintiffs' *state law* claims for prospective declaratory or injunctive relief against Falcon and Hawkins in their *official capacities*; (R. Doc. 19 at 3); (4) the Eleventh Amendment *does not bar* Plaintiffs' *federal law* claims for prospective declaratory or injunctive relief against Falcon and Hawkins in their *official capacities* pursuant to the *Ex Parte Young* exception;[2] (R. Doc. 19 at 3); (5) the Eleventh Amendment *does no*t bar suit against Falcon or Hawkins in their *individual capacities*; (R. Doc. 14 at 11); and (6) Falcon and Hawkins are not "statutorily excluded" from the term "debt collector" because Plaintiffs allege that Defendants acted outside of their official duties. (R. Doc. 14 at 10).

In short, the only claims that survived the Motion to Dismiss, and that are presently before the Court, are (1) Plaintiffs' federal and state law claims (including those for monetary damages) against Falcon and Hawkins (hereinafter referred to as the "Defendants") in their *individual capacities* and (2) Plaintiffs' federal law claims against Defendants in their official capacities for prospective declaratory relief or injunctive relief.

## II.    FACTUAL BACKGROUND

The following facts are drawn from Plaintiffs' Complaint and the attached exhibits. They are assumed to be true for purposes of this Motion. Where the exhibits contradict the allegations

---

[2] *Ex Parte Young,* 209 U.S. 123, 155–56, 28 S. Ct. 441, 52 L.Ed. 714 (1908).

of the Complaint, the exhibits control. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 377 (5th Cir. 2004).

Plaintiffs allege that the named defendants, including Falcon and Hawkins, devised and executed a scheme to steal and defraud Plaintiffs of money by mailing letters and forty (40) collection notices (all 40 of which were sent on the on the same day, June 19, 2019) (collectively, the "Collection Notices) to Lenora in which they claimed that Lenora owed unpaid premiums to the OGB. (R. Doc. 1 at 8). These Collection Notices were mailed to 5270 Packard St. Baton Rouge, La 70811, where all Plaintiffs reside. (R. Doc. 1 at 4).

Plaintiffs allege that the scheme began on December 17, 2018, when Hawkins made a "false representation of a debt" through a letter mailed to Lenora. (R. Doc. 1 at 8 and 13). The December 17, 2018 letter provided that in April 2015, Lenora instructed the OGB to begin deducting her monthly health coverage premiums from her retirement benefits. (R. Doc. 1 at 51). Prior to April 2015, Lenora was directly billed for her premium payment, which she timely paid each month. (R. Doc. 1 at 51). However, an error occurred in the process of updating the OGB's database as to the way Lenora's premium would be paid, and as a result, the OGB did not collect premiums from Lenora's retirement check from June 2015 to August 2018. (R. Doc. 1 at 51). Accordingly, as of December 17, 2018, Lenora had a past due balance of $3,918.59. (R. Doc. 1 at 51). The December 17, 2018 letter further directed Lenora to contact Hawkins if she believed that the OGB was in error regarding her past due premiums or wished to further discuss the matter. (R. Doc. 1 at 51). Hawkins letter was typed on the letterhead of the OGB and signed: "Sincerely, the OFFICE OF GROUP BENEFITS." (R. Doc. 1 at 51).

Apparently, McZeal attempted to contact someone regarding the December 17, 2018 letter. (R. Doc. 1 at 52). In response to McZeal's attempt, Falcon submitted correspondence via mail and email, which explained that McZeal's "communication to this office is acknowledged."

(R. Doc. 1 at 52). It further explained that because Lenora utilized her health coverage during the months of June 2015-September 2018, she owed $3,918.59 to the OGB. (R. Doc. 1 at 52). Falcon's letter was written on the letterhead of the Office of the Commissioner, State of Louisiana, Division of Administration, and signed: "Yours truly, Mark E. Falcon Special Counsel." (R, Doc. 1 at 52).

On February 4, 2019, the OGB mailed an "Initial Notice of Outstanding Debt Owed – Premiums" to Lenora. (R. Doc. 1 at 53). It reiterated the outstanding premium balance and informed Lenora that failure to pay the balance within sixty (60) days will result in the debt being transferred for collection to the ODR. (R. Doc. 1 at 53). Upon transfer, the debt would be subject to an additional collection fee not to exceed twenty-five percent (25%) of the total amount owed pursuant to La. R.S. 47:1676. (R. Doc. 1 at 53). It again referred Lenora to Hawkins if she believed there was an error regarding the debt owed to the OGB. (R. Doc. 1 at 53).

On March 12, 2019, the OGB mailed a "Final Notice of Outstanding Debt Owed OGB – Premiums." It reiterated the substance of the February 4, 2019 letter and provided that if the debt was not paid within thirty (30) days the debt would be transferred to the ODR. (R. Doc. 1 at 60).

On June 19, 2019, the ODR sent 40 collection letters addressed to Lenora. (R. Doc. 1-1). The letters demanded that Lenora pay $4,898.33 and provided that failure to pay the debt in full "without an active ODR payment plan in place," would result in a levy being placed on Lenora's bank account, garnishment of her wages, etc. (R. Doc. 1-1 at 3-4).

According to Plaintiffs, the Defendants' intent in sending the Collection Notices was to harass Plaintiffs and extort money that the Defendants were not owed. The Defendants' "fraudulent acts" allegedly caused Plaintiffs financial loss and undue stress. (R. Doc. 1 at 8). As a result, they seek $1.77 billion in recovery. (R. Doc. 1 at 46).

III.    **LAW**

    A.    **Rule 12(c) Standard**

A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004) (internal citations omitted). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal,* 556 U.S. 662 (2009). When determining plausibility, the Court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly,* 550 U.S. at 557. Factual assertions are presumed to be true, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a motion to dismiss. *Iqbal,* 556 U.S. at 678.

Further, "[a] document filed *pro se* is to be liberally construed… and a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotation marks and citations omitted). Notwithstanding, the Court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L.Ed. 2d 209 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678.

When, as here, the defendants are charged with fraudulent activity, Rule 9(b) of the Federal Rules of Civil Procedure requires the plaintiff to "state with particularity the

circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Fifth Circuit interprets Rule 9(b)

strictly, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the

speaker, state when and where the statements were made, and explain why the statements were

fraudulent." *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir. 1997) (internal

citations omitted).

## IV.     ANALYSIS

### A.     McZeal and Warren Have Demonstrated Standing

The issue of standing presents a "threshold jurisdictional question" in any suit filed in

federal district court. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102 (1998).

Accordingly, the Court turns first to the Defendants' allegation that McZeal and Warren lack

standing to bring their causes of action.

To establish standing under Article III of the Constitution, Plaintiffs must show (1) that

they suffered an "actual or imminent" injury which is "concrete and particularized," and may not

be "conjectural or hypothetical;" (2) "there must be a causal connection between the injury and

the conduct complained of;" and (3) "it must be likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decisions." *Lujan v. Defs. of Wildlife,* 504 U.S. 555,560,

112 S. Ct. 2130, 2136 (1992). The Defendants base McZeal and Warren's lack of standing on the

first two elements: injury-in-fact and causation.

First, Defendants argue that McZeal and Warren fail to allege a concrete injury. In so arguing, Defendants assert that McZeal and Warren fail to allege that either of them "are current or former state employees, that they had state health insurance, that premiums were" deducted "from their pay, or that they received any letters from the OGB seeking the payment of unpaid premiums." (R. Doc. 31-1 at 5).

Plaintiffs allege that because of the false accounting statements and Collection Notices, *each* Plaintiff suffered financial losses in the form of "monies paid with false interest and charges." (R. Doc. 1 at 25, 38). Although Plaintiffs do not specify the amount paid by each plaintiff, courts have held that "any monetary loss," even a small financial loss, satisfies the injury in fact element. *Carter v. HealthPort Technologies, LLC,* 822 F.3d 47 (2d Cir. 2016). Moreover, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific allegations that are necessary to support the claim." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560, 112 S. Ct. 2130, 2137 (1992) (internal quotation marks and citations omitted).

Accordingly, Plaintiffs' general allegation that they suffered financial loss in the form of "monies paid" is sufficient to withstand the Defendants' Motion. For this same reason, the Court finds that the Individuals Defendants assertion that Plaintiffs lack standing under RICO lacks merit. (R. Doc. 31-1 at 8). Plaintiffs' allegation of financial loss is sufficient to sustain a RICO claim. *In re Taxable Mun. Bond Sec. Litig.,* 51 F.3d 518, 523 (5th Cir. 1995).

The Court also notes that a violation of a procedural right granted by statute "can be sufficient in some circumstances to constitute injury in fact." *McLain v. Head Mercantile Co.*, No. 16-780, 2017 WL 3710073, at *14 (M.D. La. Aug. 28, 2017). Indeed, the Fifth Circuit has ruled that a violation of the FDCPA confers standing on a plaintiff. *Id.* (internal quotation marks

and citations omitted). Plaintiffs sufficiently alleges a concrete and particularized injury when, as here, they allege that they "have been victimized by harassment and false or misleading debt collection communications" and "seek[] to vindicate[] [their] substantive right to be free from debt collector abuse." *Id.* (internal citations omitted).

Moreover, the fact that the Collections Notices were addressed to Lenora does not refute McZeal and Warren's standing. The civil liability section of the FDCPA provides that "any debt collector who fails to comply with any provision of this subchapter with respect to ***any person is liable to such person.***" 15 U.S.C. § 1692k(a) (emphasis added). Congress clearly intended the FDCPA to have a broad remedial purpose. *Daugherty v. Convergent Outsourcing, Inc.,* 836 F.3d 507 (5th Cir. 2017). Accordingly, the FDCPA does not limit standing to the debtor alone. Instead confers standing to "any person" who is subject to abusive practices by debt collectors. *See Wright v. Finance Service Norwalk, Inc.,* 22 F.3d 647, 650 (6th Cir. 1994) ("[T]he phrase 'with respect to any person' includes more than just the addressee of the offending letters…[and] at a minimum, includes those persons…who 'stand in the shoes of the debtor; *or have the same authority of the debtor to open and read the letters of the debtor.*") (emphasis added); *see also Dutton v. Wolhar,* 809 F. Supp. 1130, 1135 (D. Del. 1992) (explaining that the statute also protects people who do not owe money at all, such as family members, employers, and neighbors of the consumer).

Here, McZeal and Warren expressly plead that they each reside at 5270 Packard St. Baton Rouge, La 70811—the address to which the Defendants forwarded the Collection Notices. (R. Doc. 1 at 4). Plaintiffs further plead that the Collection Notices were sent to induce plaintiffs "to get family members and friends" to pay the debt. (R. Doc. 1 at 11). Accordingly, McZeal and Warren, as either family or friends of Lenora, were harassed by the debt collection practices of the Defendants and, therefore, have sufficiently alleged injury-in-fact.

Second, Defendants argue that McZeal and Warren have not shown that their injuries were caused by Falcon or Hawkins. Plaintiffs allege, *inter alia,* that (1) "the named defendants," including Falcon and Hawkins, "devised a scheme to steal and defraud" Plaintiffs, (R. Doc. 1 at 7), and (2) "Defendants and each of them made false representations" about the debt amount owed. (R. Doc. 1 at 11). More specifically, Plaintiffs allege that Falcon wrote the letter dated January 16, 2019, (R. Doc. 1 at 52), which allegedly contains false information. (R. Doc. 1 at 14). They also contend that Hawkins made a false representation of debt through a collection notice dated December 17, 2018, (R. Doc. 1 at 13 and 51), and that the misrepresentations caused Plaintiffs to suffer undue stress and financial losses. (R. Doc. 1 at 38). As set forth above, McZeal and Warren both allege that each paid money attributable to false interest charges. The Court construes such pro se pleadings liberally. Therefore, the Court concludes that McZeal and Warren sufficiently allege that Falcon and Hawkins caused their injuries.

### B.     Qualified Immunity

The Defendants assert qualified immunity with respect to Plaintiffs' federal law claims. (R. Doc. 31 at 1). The qualified immunity defense is a familiar one that operates to shield government officials performing discretionary functions from *personal* civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person should have known. *Huff v. Crites,* 473 F. App'x 398 (5th Cir. 2012); *see also Walker v. Howard,* 517 F. App'x 236, 237 (5th Cir. 2013) (stating that "[t]he defense of qualified immunity applies only to suits against defendants in their official capacities."). Courts employ a two-step analysis for determining the existence of qualified immunity. Plaintiffs must establish: (1) that Defendants committed a statutory or constitutional violation under current law; and (2) that Defendants' actions were objectively unreasonable considering the law that was clearly

established at the time of the alleged misconduct. *Club Retro, LLC v. Hilton,* 568 F.3d 181, 194 (5th Cir. 2009).

Having considered the pleadings and accompanying exhibits, the Court finds that the Defendants' Motion for Judgement on the Pleadings pertaining to Plaintiffs' federal law claims on the grounds that they are entitled to qualified immunity should be granted. Specifically, the Court concludes that Plaintiffs have not alleged sufficient facts to establish that the Defendants violated a clearly established constitutional or statutory right. The Court will address Plaintiffs' federal law claims in turn.

### 1.    Plaintiffs fail to establish that Defendants violated RICO

To state a claim under 18 U.S.C. § 1962, Plaintiffs must allege (1) the conduct; (2) of an enterprise; (3) through a pattern of (4) racketeering activity. *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989) (internal citation omitted).

Defendants assert that Plaintiffs fail to demonstrate a pattern of racketeering activity—particularly one that is continuing in nature. (R. Doc. 31-1 at 9-11). A "pattern" of racketeering activity requires at least two acts of racketeering activity. RICO defines "racketeering activity" as "any act which is indicatable" under specified provisions of Title 18, including mail fraud. 18 U.S.C. 1961(1)(b). "Racketeering activity" is often referred to as "predicate acts" that are related, and which amount to, or pose a threat of, continuing criminal activity. As such, to establish a pattern of predicate acts, a plaintiff must show that the defendant's conduct subsumes two important elements: (1) relationship and (2) continuity.

Here, Plaintiffs assert that Defendants engaged in the predicate acts of mail fraud, fraud, forgery, and embezzlement. (R. Doc. 1 at 19). The heightened pleading standard of Rule 9(b) also applies to the pleading of fraud as a predicate act in a RICO claim" *Tel-Phonic Sers., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1138 (5th Cir. 1992)*.* Accordingly, the Complaint must

adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir. 1997).

The Court finds that Plaintiffs sufficiently plead the requisite "who, what, when, and where" facts to state a claim of fraud. Plaintiffs contend that Defendants' conduct in mailing Collection Notices containing misrepresentations of debt constitutes mail fraud. Particularly, Plaintiffs allege that Hawkins made false representations of debt through a letter mailed on December 17, 2018. (R. Doc. 1 at 13). This letter allegedly misrepresents the amount of money owed by Lenora. Falcon also made a false representation of debt owed by Lenora through a letter addressed to McZeal and mailed on January 16, 2019. (R. Doc. 1 at 14). Accordingly, the Complaint sufficiently alleges the statements that were fraudulent (the debt and amount owed), when and where the statements were made (in letters mailed on December 17, 2018 and January 16, 2019), and those responsible for the statements (Falcon and Hawkins).

The Court, however, agrees with Defendants assertion that Plaintiffs fail to allege that the acts by Falcon and Hawkins meet the continuity requirement. The continuity element is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Abraham v. Sign,* 480 F.3d 351, 355 (5th Cir. 2007).

Closed-ended continuity refers to a situation in which an enterprise has been engaging in related predicates over a long period of time. *Id.* "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 242 (1989) (internal citations omitted).

Here, Plaintiffs only allege that Defendants are responsible for the December 17, 2018 and January 16, 2019 letters. Plaintiffs do not allege that Defendants are responsible for any of the other letters. Accordingly, Defendants' alleged predicate acts occurred over a one-month period (December 2018 – January 2019), which is insufficient to demonstrate closed-ended continuity. Even if the Complaint was construed to allege that Defendants wrote and are responsible for all the Collections Notices at issue, the Collection Notices were mailed within six-month time frame (December 2018 – June 2019). Six months is insufficient to demonstrate closed-ended continuity. *Tel-phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1140 (5th Cir. 1992) (holding that seven months is insufficient to establish a closed-ended scheme).

Likewise, Plaintiffs' fail to plead sufficient facts to establish a pattern of open-ended continuity. Contrary to closed-ended continuity, open-ended continuity has no strict temporal requirement. *Word of Faith Outreach Ctr. Church, Inc. v. Sawyer,* 90 F.3d 118, 122 (5th Cir. 1996) (explaining that an open-ended pattern relates to the threat of future repetition, not the length of time over which racketeering predicates have occurred). Open-ended continuity, may be "shown by demonstrating either that the predicate acts establish a specific threat of repetition extending indefinitely into the future or that the predicates are a regular way of conducting the defendant's ongoing legitimate business." *Id.*

The determinative factors in the open-ended continuity analysis are the nature of the RICO enterprise and the predicate acts. Specifically, "[w]here the enterprise is engaged primarily in racketeering activity, and the predicate acts are inherently unlawful, there is a threat of continued criminal activity, and thus open-ended continuity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 243 (2nd Cir. 1999) (internal citations omitted). When the enterprise, however, primarily conducts legitimate business, there is no presumption of a continued threat. *Id.* Instead, there must be some evidence from which it may be inferred that the

predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity. *Id.*

In this case, Plaintiffs have not demonstrated that the enterprise is engaged in primarily racketeering activity. Moreover, Plaintiffs have not shown that Defendants' scheme to defraud individuals of money is a regular way of conducting their ongoing legitimate business. Conversely, the Court finds that Defendants' alleged scheme is by its very nature finite. Once Defendants accomplish their alleged scheme to receive money from Plaintiffs, the scheme would end. Although Plaintiffs attempt to magnify the racketeering scheme by expanding the number of victims, Plaintiffs have not plead facts sufficient to show that Defendants have conducted predicate acts against anyone other than Lenora, Warren, and McZeal. Plaintiffs' conclusory allegations regarding "the class" are not sufficient to support a showing of open-ended continuity. Rather, the Complaint supports a finding that Defendants' alleged scheme to receive monies from Plaintiffs will end once it collects the money requested in the Collection Notices.

Accordingly, the Court finds that Defendants' conduct does not pose a continuing threat, and Plaintiffs, therefore, fail to state a claim for RICO violations.

### 2.    Plaintiffs' fail to state a claim under the FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Debt collectors who fail to comply with the FDCPA are subject to civil liability. 15 U.S.C. § 1692k.

To state claim under the FDCPA, the plaintiff must allege facts that establish the following: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant attempting to collect the debt qualifies as a debt collector under the FDCPA;

and, (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Sibley v. Firstcollect, Inc.,* 913 F. Supp. 469, 471 (M.D. La. 1995). Because Congress intended the FDCPA to have a broad remedial purpose, the FDCPA has been construed broadly and in favor of the consumer. *Daugherty v. Convergent Outsourcing, Inc.,* 836 F.3d 507 (5th Cir. 2017).

As a threshold matter, Plaintiffs must demonstrate that Defendants are "debt collectors" as defined by the FDCPA. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term encompasses "third party collection agents regularly collecting for a debt owner not on a debt owner seeking to collect debts itself." *Henson v. Santander Consumer USA Inc.,* 137 S. Ct. 1718, 1720, 198 L.Ed.2d 177 (2017). The term does not, however, include the consumer's creditors or "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Perry v. Stewart Title Co.,* 756 2d 1197, 1208 (5th Cir. 1985) (internal citation omitted); 15 U.S.C. § 1692a(6)(A). Accordingly, a plaintiff seeking relief under the FDCPA fails to state a claim if it is against a person (or entity) to whom he/she owes a debt (i.e., their creditor) or an employee thereof.

In the instant matter, the Complaint and accompanying exhibits make clear that the OGB is the creditor to which Lenora allegedly owes a debt and that the ODR is the third-party debt collection agency to which the OGB transferred Lenora's debt. (R. Doc. 1 at 31, 51, 53, 54, 58, 60). Additionally, it is easily discernable that Hawkins is either an officer or employee of the OGB, as the letters alleged to be written and/or sent by Hawkins are each written on the OGB's letterhead and signed "Sincerely, OFFICE OF GROUP BENEFITS." (R. Doc. 1 at 51 and 54).

As an officer or employee of the OGB, Hawkins is exempt from liability under the FDCPA. Because Hawkins' status as an employee of Lenora's creditor is incurable, any attempt to amend the Complaint to state a claim against Hawkins under the FDCPA will be futile.

Unlike the letters alleged to be from Hawkins, Falcon's letter is written on the letterhead of the Office of the Commissioner, which appears to be (although, it may not be) a separate entity from the OGB. (R. Doc. 1 at 52). Nonetheless, even if Hawkins is not exempt from liability as an employee of the OGB, Plaintiffs fail to plead sufficient facts to demonstrate that Falcon meets the FDCPA's definition of a "debt collector." Specifically, Plaintiffs do not allege that "the principal purpose" of Falcon's business "is the collection of debts," or that he "regularly collects or attempts to collect" debts owed to the OGB. For this reason, Plaintiffs fail to state a claim against Falcon under the FDCPA. Accordingly, the claims against Hawkins and Falcon under the FDCPA shall be dismissed.

### 3.    Plaintiffs' fail to state a claim under 42 U.S.C. § 1982

Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Section 1982 requires an intentional act of racial discrimination by the defendant. *Duncan v. United Servs. Auto. Ass'n Ins.*, 14-2989, 2016 WL 3952091, at *5 (E.D. La. July 22, 2016) (internal citations omitted). To establish a claim under Section 1982, Plaintiffs must present sufficient evidence showing that the defendant(s) intentionally discriminated against him or her based on race. *Id.* (internal citations omitted).

Plaintiffs do plead not (or even attempt to plead)) any allegations indicating that Defendants discriminated against them on the basis of race. Consequently, Plaintiffs fail to state a claim under Section 1982.

### 4.    Plaintiffs' fail to state a claim under 42 U.S.C. § 1983

"To state a claim under Section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution of the United State or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Priester v. Lowndes County,* 354 F.3d 414, 420-21 (5th Cir. 2004). This circuit has a heightened pleading standard with respect to Section 1983 that requires a plaintiff to allege with some specificity the facts which make out its claim. *Streetman v. Jordan,* 918 F.2d 555, 557 (5th Cir. 1990). Thus, a plaintiff must allege some factual detail as the basis for a Section 1983 claim. *Id.* Plaintiffs' Complaint does not rise to this standard.

In the instant matter, Plaintiffs bring an action under Section 1983 for Defendants' alleged violation of their right to privacy. (R. Doc. 1 at 17 and 33). For the Court to find that a right to privacy exists in this case, the Court must first find that a constitutionally protected interest exists. The Supreme Court has recognized that there are two kinds of privacy interests that are protected under the U.S. Constitution: (1) an individual's interest in avoiding disclosure of personal matters and (2) an individual's interest in independence in making certain kinds of important decisions. *Whalen v. Roe,* 429 U.S. 589, 598-600, 97 S. Ct. 869, 875-877, 51 L.Ed. 2d 64 (1977).

Here, the former interest, "in avoiding disclosure of personal matters," is implicated, as Plaintiffs contend that Defendants' disclosed private fact. (R. Doc. 1 at 17). The Complaint, however, does not contain sufficient allegations to withstand Defendants' Motion. As Defendants accurately point out, Plaintiffs do not allege that Falcon or Hawkins by their own individual conduct publicly disclosed private facts. (R. Doc. 31-1 at 15). Nor do they allege the private fact that were disclosed. In a conclusory fashion, Plaintiffs assert that "[t]here was a public disclosure of a private fact including the recording of the" Notice of Default and

Assignment. (R. Doc. 1 at 17). They do not indicate (1) who made the public disclosure, (2) what facts they consider to be private (and whether the alleged private facts are protected by the Constitution), or (3) where the Notice of Default and Assignment was recorded. The absence of such specificity is fatal to Plaintiffs' claim, and, therefore, Plaintiffs fail to state a claim for relief under Section 1983.

### 5.    Plaintiffs' fail to state a claim under 42 U.S.C. § 1985

Similarly, Plaintiffs fail to state a conspiracy claim under 42 U.S.C. 1985. Section 1985 provides for three separate causes of action. First, Section 1985(1) prohibits the interference with a federal officer in the performance of his or her duties. Second, Section 1985(2) protects parties and witness who seek to attend or testify in federal court. Finally, Section 1985(3) prohibits private conspiracies to deprive persons of equal protection of the laws. Plaintiffs' claims clearly fall under Section 1985(3), as they do not contend to be federal officers or parties or witnesses seeking to attend or testify in court.

To make out a violation of Section 1985(3), a plaintiff must establish four elements: (1) a conspiracy; (2) to deprive the plaintiff of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) a resulting injury. *Untied Broth. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). At the core of a Section 1985(3) claim is the existence of a conspiracy based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267-68, 113 S. Ct. 753, 122 L.Ed. 2d 34 (1993).

Here, the Complaint contains only one conclusory allegation regarding discrimination—that Defendants devised a scheme to "harass elderly and disabled people." (R. Doc. 1 at 8). The Complaint is completely bereft of any other allegation to support this lone assertion. Importantly,

Plaintiffs do not even allege that they are, in fact, elderly or disabled. Accordingly, Plaintiffs' claim under Section 1985 fails to state a plausible claim for relief under Section 1985(3).

> **6.    Plaintiffs' fail to state a claim under 42 U.S.C. § 1986**

Section 1986 provides a cause of action against anyone who has "knowledge that any of the wrongs conspired to be done and mentioned in section 1985 of this title, are about to be committed, ad having the power to prevent or aid in preventing the commission of the same, neglects to do so." The plain language indicates that Section 1986 is derivative of Section 1985, and therefore a valid Section 1985 claim is a perquisite to a claim under Section 1986. *Bryan v. City of Madison, Miss.,* 213 F.3d 267, 276 (5th Cir. 2000). Because Plaintiffs fail to state a claim under Section 1985, their Section 1986 claim also fails.

> **7.    Plaintiffs fail to establish that Defendants violated an established constitutional or statutory right and are entitled to Qualified Immunity**

The Court finds that Plaintiffs' Complaint fails to establish that a clearly established constitutional or statutory right has been violated. The Court need not reach prong two of qualified immunity and holds that Defendants, Falcon and Hawkins are entitled to qualified immunity. Accordingly, the Court recommends that Plaintiffs' claims against Defendants in their individual capacities be dismissed.

> **C.    No Federal Claims Remain and there is no other basis for Subject Matter Jurisdiction**

The Court has subject matter jurisdiction in only two circumstances. First, the Court has subject matter jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Second, it has subject matter jurisdiction over civil actions where the amount in controversy exceeds $75,000 exclusive of interest and costs and the parties are completely diverse. 28 U.S.C. § 1332. Complete diversity exists when all plaintiffs are citizens of a different state than all defendants.

It is clear that Plaintiffs asserted causes of actions that arise under the Constitution and laws of the United States. It is further clear from the face of the Complaint that diversity jurisdiction is lacking. The Complaint makes clear that all Plaintiffs are citizens of Louisiana. By Plaintiffs' own admission, they each reside at 5270 Packard St. Baton Rouge, La 70811. (R. Doc. 1 at 4). It is further clear that Defendants are also citizens of Louisiana as they are employees of the State of Louisiana.

The critical issue is, therefore, whether Plaintiffs can "prove any set of facts" to support that they are entitled to relief under federal law. To make this determination, the Court need only assess whether, accepting factual allegations in the Complaint, Plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981). As earlier noted, the only claims that survived Defendants' previous Motion to Dismiss are (1) Plaintiffs' federal and state law claims (including those for monetary damages) against Defendants in their *individual capacities* and (2) Plaintiffs' federal law claims against Defendants in their official capacities for prospective declaratory relief or injunctive relief. The Court has already found that Defendants have qualified immunity to Plaintiffs' federal law claims against Defendants in their individual capacities.

The Court previously held the Eleventh Amendment does not bar Plaintiffs' federal law claims for prospective declaratory or injunctive relief against Defendants in their official capacities pursuant to the *Ex parte Young* exception. (R. Doc. 19 at 3). Upon review of Defendants' Motion for Judgment on the Pleadings, the Court, however, finds that Plaintiffs fail to plead facts setting forth a continuing violation of federal law, and, therefore, their claims for prospective declaratory and injunctive relief against Defendants in their official capacities fail as a matter of law.

To avoid an Eleventh Amendment bar by means of *Ex parte Young,* Plaintiffs "must establish that" they have a "constitutionally protected interest that" is "continuing to be infringed by the State officials." *Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 345 (5th Cir. 2013). In its evaluation of Plaintiffs' claims for RICO violations, the Court found that Defendants' alleged conduct is not continuing in nature, and therefore, Plaintiffs' RICO violations claim fails. The same holds true for each of Plaintiffs' federal law claims against Defendants in their official capacities.

Plaintiffs' allegations that they are subject to "threats of continued fraudulent acts" and Defendants "continue to control the enterprises as of the date of the filing of this lawsuit" are legal conclusions "couched as factual allegation[s]" that this Court is not required to accept as true, and Plaintiffs have not alleged any facts to support same. *Papasan v. Allain,* 478 U.S. at 286. Particularly, Plaintiffs do not contend that they continue to receive Collection Notices from Defendants or have otherwise received any communication or threat from Defendants since June 19, 2019. Plaintiffs have, therefore, failed to plead sufficient facts to show that Defendants pose an ongoing threat to Plaintiffs. Accordingly, the Court finds that Plaintiffs claims against Defendants in their official capacities should also be dismissed.

The Court, therefore, lacks subject matter jurisdiction because (1) Defendants have qualified immunity from Plaintiffs' federal claims against them in their individual capacities and (2) the Eleventh Amendment bars Plaintiffs' claims against Defendants in their official capacities.

The Court has also considered whether the plaintiffs should be allowed an opportunity to amend the pleadings to address the deficiencies set forth above. Based on the facts alleged, these pleading deficiencies as to the federal claims cannot be resolved by subsequent amendment. Any attempt to do so would be futile.

**D.      The Court should decline to exercise supplemental jurisdiction over any state law claims**

The Court need not resolve or address Plaintiffs' state law claims. A district court may decline the exercise of supplement jurisdiction over state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367(c). Having dismissed Plaintiffs' federal law claims, it is appropriate for the court to decline the exercise of supplemental jurisdiction over Plaintiffs' state law claims.

**V.      CONCLUSION**

Based on the foregoing,

**IT IS RECOMMENDED** that the Defendants' Motion for Judgment on the Pleadings (R. Doc. 31) be **GRANTED in part,** and that Plaintiffs' federal law claims against Defendants be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendants, and that Plaintiffs' state law claims against Defendants be **DISMISSED WITHOUT PREJUDICE,** and that this matter be closed.

Signed in Baton Rouge, Louisiana, on August 11, 2021.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE